William J. Baine
State Bar No. 01552000
The Baine Firm, P.C.
16018 Via Shavano, Ste. 102
San Antonio, TX 78249
Tel: (210) 224-8797
Fax: (210) 227-8750
Email : wbaine@bainefirm.com

Kate Valent
Scheef & Stone, LLP
2600 Network Blvd., Ste. 400
Frisco, TX  75034
Tel : (214)472-2100
Fax : (214)472.2150
Email : Kate.Valent@solidcounsel.com

ATTORNEYS FOR JAMES W. CUNNINGHAM, CHAPTER 7 TRUSTEE, IN RE:  ALAMO LS, LLC

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| ALAMO LS, LLC | § § | CASE NO. 19-33382-MVL7 |
| Debtor | § § | |
| JAMES W. CUNNINGHAM, CHAPTER 7 TRUSTEE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | ADVERSARY NO. _____ |
| FOOD MANAGEMENT PARTNERS, INC.; DAYSPRING OPERATING COMPANY, LLC; ALLEN JONES; JASON KEMP; LARRY HARRIS; PETER DONBAVAND; ALL JONES, LLC; LARRAC, INV., LLC; BPTX HOLDINGS, LLC; RCV PATRON, LLC, PAD REALTY, LLC; AMARO MANAGEMENT COMPANY, LLC, TX ALAMO MANAGEMENT, LLC, LSF5 CACTUS, LLC and JOHN DOE DEFENDANTS 1 - 10 | § § § § § § § § § § § § § | |
| Defendants. | § | |

**ORIGINAL COMPLAINT AND COMPLAINT TO AVOID AND TO RECOVER FRAUDULENT TRANSFERS**

Comes Now James W. Cunningham, Chapter 7 Trustee ("Plaintiff") and files this Original Complaint and Complaint to Avoid and to Recover Fraudulent Transfers and would show unto the Court as follows:

**I.   JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the Northern District of Texas (the "Court") has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1334.

2. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), (F), (H) and (0). Plaintiff hereby consents, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court in connection with the Complaint.

3. Venue over this Complaint, as well as the Debtor's Chapter 7 case, is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, and Local Rule 7001-1 of the Local Rules for the Bankruptcy Courts for the Northern District of Texas (the "Local Rules").

4. The statutory and legal predicates for the relief sought herein are 11 U.S.C. §§544, 547, 548 and 550, *inter alia*, of the Bankruptcy Code and Rules 3007 and 7001 of the Bankruptcy Rules.

**II.   PROCEDURAL BACKGROUND**

5. A judgment was entered against the Debtor and another defendant in Michigan State Court for $1,713,553.08 (the "Judgment").

6. On May 7, 2019, the Judgment was transferred to Texas in the lawsuit styled *Alan H. Gallaway, et al. v. Alamo LS, LLC*, et al., Case No. 2019CI09211 in the 131st District Court, Bexar County, Texas (the "State Court Litigation").

7. In the State Court Litigation, Alan and Suzanne Gallaway (the "Gallaways") sought post-judgment discovery from the Debtor and its parent company, Food Management Partners, Inc. ("FMP") regarding Debtor's finances and operations. After the failing to produce the post-judgment discovery, the Debtor and FMP received sanctions orders from the Bexar County District Court.

8. Shortly thereafter, the Debtor filed bankruptcy and filed its Suggestion of Bankruptcy with the Bexar County Court.

9. The Gallaways continued to seek information regarding the Debtor's financials and its relationship with its parent company in the bankruptcy case through a 2004 examination of the Debtor.

10. After review of the Debtor's records, counsel for the Gallaways discovered a number of fraudulent transfers by the Debtor to insiders.

11. Alamo LS, LLC ("Alamo") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 7, 2019 (the "Petition Date") in a proceeding styled *In Re Alamo LS, LLC*, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 19-33382-bjh7 ("Alamo Proceeding").

12. James W. Cunningham was appointed as the Chapter 7 Trustee for the Debtor under 11 U.S.C §702.

### III. THE PARTIES

13. Plaintiff is James W. Cunningham.

14. FMP SA Management Group, LLC ("FMP SA") had a management agreement with Alamo to manage and operate restaurants on behalf of Alamo. It is a Texas Limited Liability Company and may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

15. PAD Realty, LLC ("PAD") is an owner of Alamo. It is a Texas Limited Liability Company and may be served by serving its registered agent Peter Donbavand at 19519 Terra Elm, San Antonio, Texas 78255.

16. All Jones, LLC is a partner of Alamo and is owned, managed, directed and controlled by Allen Jones, who is also a manager of FMP. It is a Texas Limited Liability Company and may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

17. Larrac, Inv., LLC is a partner of Alamo and is owned, managed, directed and controlled by Larry Harris, who is also a manager of FMP. It is a Texas Limited Liability Company and may be served by serving its registered agent Sloan & Roberts, PLLC at 5151 Belt Line Rd., Suite 1050, Dallas, TX 75254-6738.

18. BPTX Holdings, LLC is a partner of Alamo and is owned, managed, directed and controlled by Brian Padilla. It is a Texas Limited Liability Company and may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

19. RGV Patron, LLC is a partner of Alamo and is owned, managed, directed and controlled by Brian Bailey. It is a Texas Limited Liability Company and may be served by serving its registered agent Brian Bailey at 1226 Nicholas Manor, San Antonio, Texas 78258.

20. Amaro Management Company, LLC is a partner of Alamo and is owned, managed, directed and controlled by Bob Amaro. It is a Texas Limited Liability Company and may be served by serving its registered agent Bob Amaro at 22535 Old Fossil Rd., San Antonio, Texas 78261.

21. Dayspring Operating Company, LLC is the tax partner of Alamo and is owned, managed, directed and controlled by Jason Kemp, who is also a manager of FMP. It is a Texas

Limited Liability Company and may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

22. Peter Donbavand is a manager/director of PAD Realty, LLC and may be served with process at 19519 Terra Elm, San Antonio, Texas 78255.

23. Allen Jones is a manager/director of Alamo and may be served with process at 2338 N Loop 1604 W Ste. 350, San Antonio, Texas 78248.

24. Jason Kemp is a manager/director of Alamo and may be served with process at 2338 N Loop 1604 W Ste. 350, San Antonio, Texas 78248.

25. Larry Harris is a manager/director of Alamo and may be served with process at 2338 N Loop 1604 W Ste. 350, San Antonio, Texas 78248.

26. Food Management Partners, Inc. ("FMP") is a Texas Corporation that had management contracts with Alamo. It may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

27. TX Alamo Management, LLC is a partner of Alamo and is owned, managed, directed and controlled by Allen Jones, Jason Kemp, and Larry Harris. It is a Texas Limited Liability Company and may be served by serving its registered agent Capitol Corporate Services, Inc., at 206 E. 9th Street, Ste. 1300, Austin, Texas 78701.

28. LSF5 Cactus, LLC is a Texas limited liability company who guaranteed a lease on behalf of Alamo and is responsible for all or part of a judgment obtained against Alamo pursuant to a lease. It may be served by serving its registered agent CT Corporation System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

29. John Doe Defendants 1 – 10. Based on the various fictitious legal entities of Defendants and the lack of document production in bankruptcy proceedings, there are or may be a number of individuals and/or legal entities who are or may be liable to Plaintiff for the claims asserted herein.

### IV. RELATIONSHIP OF THE PARTIES

30. The Defendant entities are closely related and intertwined companies which are owned and managed by a close group of individuals, who are also Defendants in this case. They describe themselves in various formats as "a multi-concept operator of independent restaurant brands co-founded by three industry veterans." They have established a pattern and practice of acquiring restaurants through intertwined companies that provide goods and services to a closely related company and then file bankruptcy to shield themselves and their entities from creditors while securing payment for goods and services to themselves while leaving other creditors unpaid. In other instances, they have allegedly made promises and representations to induce investments in their business operations without intent to repay the investors.

### V. FACTUAL BACKGROUND

31. On or about July 21, 2017, Alamo was formed by Jones, Kemp and Harris for what appears to be the sole purpose of bidding for and purchasing certain restaurant assets of TX. C.C., Inc. in connection with several bankruptcy estates, jointly administered in *In Re: TX. C.C., Inc.*, Case No. 17-40297 filed in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

32. On or about August 1, 2017, Alamo acquired 10 different restaurants ("Properties") of TX. C.C. pursuant to an Asset Purchase Agreement. Alamo assumed operations of the Properties and entered into a Management Agreement ("Agreement") with FMP SA to manage and operate the Properties. The Agreement required FMP SA to provide certain services, including

billings and collections, internal accounting, marketing services, management of financing and cash management activities, budgeting, purchasing, supervision of personnel and payroll, administrative and tax matters, IT services, human resources, operational management support and research and development. FMP SA agreed to perform duties in a reasonable and customary manner. For services provided, FMP SA was to receive a management fee of 4%. However, FMP SA failed to properly compute the management fee or intentionally diverted funds from Alamo to FMP SA. Further, FMP SA through its management practices and in violation of its fiduciary duties, failed to properly manage, market and run the restaurants, using these breaches of duty and their effect on Alamo's business and assets as an excuse to declare bankruptcy and avoid paying debts.

33. Defendants set up a financial structure that included numerous different bank accounts at numerous banks and the records reveal transfers, deposits and withdrawals among the various accounts which appear to lack any cognizable basis or reasonable business justification. The records are incomplete and the corporate representative deposed in the 2004 deposition of FMP SA was unable to explain the methods or processes for the accounts, the transfers between the various accounts or the justification for the transfers. It also appears from the records that Defendants submitted income statements that did not accurately reflect the financial condition of Alamo, including but not limited to the revenue received from operations. Additionally, there are unexplained transfers and loans among Alamo and FMP SA. The financial records provided present troubling facts concerning not only the services provided by FMP SA but also whether there are preferential transfers or fraudulent transfers by and among the Defendants.

34. FMP SA made multiple transfers for "Management Fees" that were not in accordance with the Management Agreement. The Management Agreement provided that

"Manager (FMP SA) shall be entitled to receive from the Company a management fee (the "Management Fee"), payable every week during the term hereof, in the amount of four percent (4%) of the Company's net consolidated revenues, and minus all sales tax, realized during the preceding week, computed and paid on the last day of each week. However, the Management Fees FMP SA paid itself far exceeded the amount provided for in the contract. For example, in January 2018, FMP SA transferred $212,452.52 in fees to itself. If these fees were in accordance with the Management Agreement, Alamo would have to have generated at least $5,311.313.00 in revenue for that month. Likewise, in February, 2018, FMP SA transferred $225,069.86 in fees to itself. If these fees were in accordance with the Management Agreement, Alamo would have to have generated at least $5,626,756.50 in revenue for that month. The total revenue to match the Management Fees for just that two-month period would be in excess of $10,000,000.00. However, and according to the 2018 tax return provided by FMP SA, Alamo only generated $4,874,954 for the entire year. Thus, and while Debtor is unable to provide specific numbers for the fraudulent and/or improper transfers due to the failure of FMP SA to provide complete financial records, it is clear that FMP SA made excessive payments to itself for Management Fees. Further, Alamo's tax return shows that it paid management fees of only $290,340 for 2018.

35. The financial records provided by FMP SA to the Trustee and also to a creditor (Gallaway) through a 2004 deposition and Court Orders were woefully inadequate and it appears were intentionally withheld to prevent the Trustee and the Creditor from determine the true nature of the fraudulent transfers. For example, Defendants produced the following bank statements from the "Concentration Account": January, 2018; February, 2018; November 2018 through July, 2019. Defendants failed to produce any records from 2017 and from March, 2018 through October, 2018. It produced an Income Statement for the Year Ended 2018 showing "Net Sales" of $4,874,954.00.

Even assuming a straight management fee of 4% without reduction per the Management Agreement, the Management Fee should have been $194,998.16. However, according to just the bank records for the "Concentration Account" showed transfers for fees of $212,452.52 just for January, 2018 and transfers of $225,069.86 for February, 2018 of 252,069.86. The 2018 Tax Return provided by FMP SA shows management fees of $290,340.00. Further, it produced an Income Statement for the first 71 days of 2019 showing "Net Sales" of $111,624.00. However, the "Deposit Account" records for that same time period show deposits totaling $226,066.86. Accordingly, the financial records provided by Defendants show a discrepancy of $114,442.86 in reported income as compared to actual income, indicating a diversion of assets.

## VI. CAUSES OF ACTION

### A. Breach of Contract

36. Alamo entered into a Management Agreement with FMP SA that is a valid and enforceable contract. Alamo performed its obligations under the Agreement and FMP SA breached its obligations under the Agreement causing Alamo damages.

### B. Breach of Fiduciary Duty

37. Having access to and control over Alamo's business operations, accounts, assets, and financial records, FMP SA owed a fiduciary duty to Alamo and breached that duty by failing to comply with the Agreement and by placing the interests of FMP SA and the principals behind FMP SA ahead of the interests of Alamo. FMP SA also had a special relationship with Alamo in that managers of the two entities were the same. Both FMP SA and Alamo's managers were Allen Jones, Jason Kemp and Larry Harris and they were each responsible for the operations of Alamo and FMP SA. In carrying out its obligations under the Agreement, FMP SA put its interests above that of Alamo. As a result, the actions, or lack of action, by FMP SA proximately caused injury

to Alamo and/or resulted in a benefit to FMP SA and its managers/principals, Jones, Kemp and Harris, to the detriment of Alamo.

38. Jones, Kemp and Harris (collectively "Alamo's Managers") were managers of Alamo and as such owed a fiduciary duty to it. Alamo's Managers failed to act in the best interest of Alamo in the management and operations of Alamo's business. Alamo's Managers breached their duty to Alamo and caused injury to Alamo and/or resulted in a benefit to FMP SA and/or other related entities to the detriment of Alamo.

### C. Avoidance of Actual Fraudulent Transfers

39. The transfers were paid by the debtor within two years of the Petition Date with the actual intent to hinder, delay or defraud the Debtor's creditors.

40. By reason of the foregoing, plaintiff is entitled to an order and judgment that the transfers are avoided under section 548 of the Bankruptcy Code.

### D. Avoidance of Constructive Fraudulent Transfers

41. The transfers were made by the Debtor within 2 years of the Petition Date, and the Debtor received less than a reasonably equivalent value in exchange for such transfer or obligation. Because the transfers were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute any value in exchange for the monies and other assets they received.

42. Moreover, the Debtor was insolvent on the date that the transfers were made or it was reasonably certain the debtor would become insolvent and intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

43. By reason of the foregoing, the Trustee is entitled to an order and judgment that the Transfers are avoided under section 548 of the Bankruptcy Code.

### E. Avoidance of Actual Fraudulent Transfers- Tex. Bus. & Comm. Code

**§ 24.005(a)(1) through 11 U.S.C. § 544(b)(1)**

44. Under 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor that is avoidable under applicable state law by a creditor holding an unsecured claim allowable under 11 U.S.C. § 502.

45. At the time the Transfers were made, other creditors of the Debtor held or would likely hold unsecured claims allowable under 11 U.S.C. § 502 as a result of the transfers.

46. As such, the Trustee moves to avoid the Transfers because the Transfers could have been avoided by the Debtor's other creditors under Texas fraudulent transfer law. *See* TEX. BUS. & COM. CODE§ 24.005(a)(1).

47. The transfers were made with the actual intent to hinder, delay, or defraud the Debtor's other creditors because, among other things:

    (a)    the transfers were concealed;

    (b)    the Debtor moved or concealed assets;

    (c)    the Debtor was insolvent or would likely become and did become insolvent as a result of the transfers;

    (d)    the transfers occurred shortly before or shortly after a substantial debt was incurred or were far in excess of the debt incurred; and

    (e)    the Transfers consisted of monies obtained through the fraud of the Debtor's Manager and the Debtor's other creditors who are also Managers of Debtor.

48. By reason of the foregoing, the Debtor's other creditors have the right to avoid the Transfers under Section 24.005(a)(1) of the Texas Business and Commerce Code, and the Trustee can seek to enforce that right under section 544(b)(1) of the Bankruptcy Code. The Trustee is

therefore entitled recover all assets wrongfully transferred to the Defendants in the form of the transfers.

### F. Avoidance of Constructive Fraudulent Conveyances- Tex. Bus. & Comm. Code§ 24.005(a)(2) through 11 U.S.C. §§ 544(b)(1)

49. Under 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor that is avoidable under applicable state law by a creditor holding an unsecured claim allowable under 11 U.S.C. § 502.

50. At the time the transfers were made, other creditors of the Debtor held unsecured claims or would likely hold unsecured claims allowable under 11 U.S. C. § 502 as a result of the transfers.

51. As such, the Trustee moves to avoid the transfers because the transfers could have been avoided by the Debtor's other creditors under Texas fraudulent transfer law. *See* TEX. BUS. & COM. CODE§ 24.005(a)(2).

52. The Debtor did not receive reasonably equivalent value in exchange for the transfers. Because the transfers were premised on maintenance and perpetuation of a fraudulent scheme, they did not contribute any value in exchange for the monies and other assets they received.

53. At the time the transfers were made, the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction.

54. At the time the transfers were made, the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

55. By reason of the foregoing, the Debtor's other creditors have the right to avoid the transfers under Section 24.005(a)(1) of the Texas Business and Commerce Code, and the Trustee can seek to enforce that right under section 544(b)(1) of the Bankruptcy Code. The Trustee is therefore entitled to recover all assets wrongfully transferred to the Defendants in the form of the transfers.

### G. Recovery of Fraudulent Transfers- 11 U.S.C. § 550(a)

56. Pursuant to 11 U.S.C. § 550(a), to the extent that a transfer is avoided under 11 U.S.C. §§ 544 and 548, *inter alia,* the Trustee may recover for the benefit of the Bankruptcy Estate the property transferred or the value of such property from (a) the initial transferee of such transfer or the entity for whose such transfer was made or (b) any immediate or mediate transferee of such initial transferee.

57. The Defendants in this case are either the (a) initial transferee of the transfers, the entity for whose benefit the transfers were made, or (b) an immediate or mediate transferee of the initial transferee.

58. By reason of the foregoing, the Trustee is entitled to recover the transfers under section 550(a) of the Bankruptcy Code for the benefit of the Debtor's estate and creditors.

### H. Unjust Enrichment

59. Based on principles of justice, equity, and good conscience, the Defendants have been unjustly enriched by the transfers. The Transfers caused the Defendants, whether intentional or unintentional, to receive money or other interests that belonged to the Debtor (for the benefit of its creditors) for no reasonably equivalent value.

60. The Defendants benefitted from their fraudulent conduct. It would be fundamentally unfair to allow the Defendants to retain funds that rightfully belong to the Bankruptcy Estate while the Debtor's other defrauded creditors may never see any distribution.

61. The transfers involved actual fraud and malice on the part of Defendants.

62. By reason of the foregoing, the transfers should be disgorged and paid to the Trustee to enable the Bankruptcy Estate to satisfy its obligations to the Debtor's creditors.

## VII. ALTER EGO/SHAM TO PERPETRATE FRAUD/PIERCING OF THE CORPORATE VEIL

63. Alamo's Managers have created a closely related and intertwined corporate structure, especially between it and FMP SA that appears to be designed to create confusion and to allow Alamo's Managers to use the corporate scheme to benefit themselves personally and defraud creditors. Alamo and the Defendants are closely related in terms of corporate structure, officers, directors, owners, managers, employees and representatives. They share common offices, employees, accounting personnel, bank accounts, rendered services on behalf of each other, handled deposits, transfers and other banking activities in a common manner. It is unclear, based on the documentation provided, whether there was a proper allocation of expenses, profits, losses, management fees and other financial aspects of Alamo. There are deposits, transfers, withdrawals and payments in the many bank accounts that have the indicia of a scheme to defraud Alamo for the personal benefit of the various LLCs and owners of those LLCs, who are also owners of and managers of Alamo and FMP SA – Jones, Kemp and Harris. Accordingly, the corporate fictions and structures set up by Defendants Jones, Kemp and Harris should be disregarded and they should be held personally liable for the damages caused to Alamo as a result of Defendants' conduct whether directly by these individuals in their management and control of Alamo's business, or through LLCs or other fictitious business entities that were established to facilitate the fraudulent

14

misuse of Alamo's business for their ultimate personal gain, including damages caused by FMP SA's breach of its obligations under the Management Agreement.

## VIII. DAMAGES

64. Alamo has suffered damages and seeks to recover loss of profits, loss of assets, and payments for adverse judgments and claims against the bankruptcy estate. It seeks to recover its attorneys' fees, court costs, and pre- and post-judgment interest.

## IX. JURY DEMAND

65. Pursuant to 28 U.S.C. §157(e) and Bankruptcy Rule 9015, Alamo hereby demands a trial by jury and tenders the fee herewith.

## X. ATTORNEY'S FEES

66. By reason of the foregoing, the Trustee is entitled to recover his costs and attorney's fees pursuant to both Federal law and Texas law.

WHEREFORE, PREMISES CONSIDERED, Alamo LS, LLC respectfully requests that upon final hearing and trial hereof, this Honorable Court grant to Alamo LS, LLC such relief and all damages as to which it may be justly entitled, either at law or in equity; either general or special, including judgment against the Defendants for damages, attorney's fees, pre- and post-judgment interest and court costs.

|  |  |
|---|---|
| Dated: October 6, 2021 | Respectfully submitted, |
|  | THE BAINE FIRM, P.C. |

/s/ William J. Baine
    William J. Baine
    State Bar No. 01552000
16018 Via Shavano, Suite 102
San Antonio, Texas  78249
Telephone:  (210) 224-8797
Facsimile:  (210) 227-8750
Email: wbaine@bainefirm.com

Kate Valent
State Bar No. 24070654
Scheef & Stone, LLP
2600 Network Blvd., Ste. 400
Frisco, TX  75034
Tel : (214)472-2100
Fax : (214)472.2150

Attorneys for Plaintiff